In re Jack W. MORRIS, Ann G. Morris dba Portland Precast, Inc., Debtors.

ROBERT K. MORROW, P.C., Trustee in Bankruptcy, Plaintiff,

v.

UNITED STATES of America, Defendant.

Bankruptcy No. 383–00977(7).
Adv. No. 84–0279.

United States Bankruptcy Court, D. Oregon.

July 9, 1985.

Bonnie Serkin Pound of Sussman, Shank, Wapnick, Caplan & Stiles, Portland, Or., for trustee.

Kathey I. Shaw, Asst. U.S. Atty. in Portland, Or., for the U.S. of America.

## MEMORANDUM OPINION

HENRY L. HESS, Jr., Bankruptcy Judge.

The trustee in this involuntary chapter 7 case instituted an adversary proceeding against the United States of America to recover an alleged preference from the Internal Revenue Service.

The complaint alleged, inter alia, that four payments were made to the IRS within 90 days of the filing of the petition herein. Also alleging that these payments enabled the IRS to receive more than it would have in a Chapter 7 proceeding, the trustee prayed that these payments be returned to the estate.

The IRS answered, alleging that it was a fully secured creditor of the debtors. Therefore, arguably, the IRS received no more than it would have in a Chapter 7 case. In a stipulation, the parties agreed that the IRS' answer be amended to allege that two of the payments were made in the ordinary course of business as contemplated in 11 U.S.C. § 547(c)(2).

Pursuant to the stipulation, the following facts are not in dispute:

1. The debtors were the shareholders of a corporation known as Portland Precast, Inc.

2. Portland Precast, Inc., was dissolved on July 12, 1982.

3. The IRS had filed a notice of federal tax lien against Portland Precast, Inc., in March of 1983 for unpaid withholding taxes.

4. The debtors continued to do business under the assumed name of Portland Precast, Inc. after the corporation was dissolved.

5. The following payments were made to the IRS by the debtors on account of federal withholding tax liability of Portland Precast, Inc., or the business conducted in that name after dissolution, and were applied as indicated below:

| Pmt. | Rec'd by IRS | Amount | Applied to Tax Period |
|------|--------------|--------|-----------------------|
| 1. | 1–26–83 | $3,237.32 | 1st Quarter 1983 |
| 2. | 2–3–83 | 1,480.40 | 4th Quarter 1981 |
| 3. | 2–22–83 | 2,082.50 | 4th Quarter 1981 |
| 4. | 2–28–83 | 5,623.94 | 1st Quarter 1983 |

6. Payments 1 and 4 above were made not later than 45 days after the debts they paid were incurred.

■ At oral argument, the IRS asserted that it had a perfected security interest in all of the property of Portland Precast, Inc. by virtue of its filing of a tax lien notice. Since the business continued to be operated by the debtors after the corporation's dissolution, the IRS argued that its security

interest remained in all the property the debtors used to generate income after dissolution of the corporation. Based on this reasoning, the IRS claimed it had a perfected security interest in the monies paid to the IRS by the debtors. Therefore, the IRS argued, it received no more than it would have received under Chapter 7.

This argument fails for two reasons. First, at the time the IRS filed its tax lien notice against Portland Precast, Inc., there was no such entity in existence. Portland Precast, Inc. was dissolved on July 17, 1982 and the tax lien notice was filed against Portland Precast, Inc., in March, 1983. No lien was filed against the debtors individually. The IRS' lien, therefore, would not constitute constructive notice to third-party bona fide purchasers of the corporate assets.

The debtors would have actual knowledge of the IRS' lien on the corporate property and, hence, not take the corporate assets free and clear of the IRS' lien. The trustee of the debtors' estate in bankruptcy, however, is a bona fide purchaser without notice of the IRS' lien. 11 U.S.C. § 544. Therefore, as between the trustee and the IRS, the trustee takes the debtors' property, including any property the debtors received from Portland Precast, Inc., free of the IRS' lien.

■ Second, even if the IRS held a perfected security interest in the corporate assets that were transferred to the debtors, the IRS was unable to identify any specific property to which its lien attached. Therefore, it is not possible to determine the value of the property securing the lien. Since the IRS cannot establish a perfected security interest in any specific property, its assertion that it received nothing more than it would in Chapter 7, fails.

The remaining question is whether the two payments mentioned above (payments number 1 and 4) fall within the purview of § 547(c)(2). That section provides:

The trustee may not avoid under this section a transfer—

(2) to the extent that such transfer was—

(A) in payment of a debt incurred in the ordinary course of business or financial affairs of the debtor and the transferee;

(B) made not later than 45 days after such debt was incurred;

(C) made in the ordinary course of business or financial affairs of the debtor and the transferee; and

(D) made according to ordinary business terms;

■ The trustee argues that, although these two payments fall within sub-parts (A), (B) and (D) of § 547(c)(2), they do not meet the test enunciated in sub-part (C). This argument is based on the assertion that it was not the debtors' ordinary course of business to timely pay taxes. Rather, it was the debtors' ordinary practice not to pay taxes in a timely manner. Therefore, the trustee argues, timely payments were not in the ordinary course of business.

The trustee asserts that § 547(c)(2) was designed to allow debtors to continue their usual activities before bankruptcy without creating a preference. The section was not, according to the trustee, designed to allow unusual action "during the debtor's slide into bankruptcy." H.R.Rep. No. 595, 95th Cong., 1st Sess. 373 (1977); S.Rep. No. 989, 95th Cong., 2d Sess. 88 (1978), U.S. Code & Admin.News 1978, p. 5787 at 6329.

This court believes that the purpose of § 547(c)(2) was to encourage creditors to continue short-term credit dealings with troubled debtors in order to forestall bankruptcy rather than encourage it. *In Re Georgia Steel, Inc.,* 38 B.R. 829 (Bkrtcy.MD Ga.1984).

With this purpose in mind, the trustee's argument fails. The trustee argues that where a debtor ordinarily is delinquent in paying his recurring bills, when he pays a bill on time, this payment is a preference if bankruptcy ensues within 90 days. Such a result would discourage creditors from working with a debtor where the debtor is financially troubled. Rather, creditors who, in the past, had not been paid within 45 days of the date a debt was incurred

would be encouraged to refuse to extend further credit and limit their losses. A rule which required a creditor to face an argument that a timely payment constituted a preference because, in the past, the debtor had been in the habit of not making timely payment, would discourage extensions of credit to a financially troubled debtor. A person who is asked to extend credit will generally have no way to predict when a debtor might decide to file a bankruptcy case. A creditor who had periodically extended credit to a debtor who was in the habit of paying late would certainly be discouraged from extending further credit under a rule that said even timely payments might be considered preferential. The creditor might, however, be willing to extend further credit if it could be assured that it would at least be able to keep payments timely made.

It might be said that a payment was not in the ordinary course of business if the payment was extraordinary in nature or amount, or was paid by some unusual method. *In Re Gold Coast Seed Co.,* 24 B.R. 595 (BAP 9th 1982); *In Re Independent Clearing House Co.,* 41 B.R. 985, 1014 (Bkrtcy.D.Ut.1984). Payment by check of payroll taxes accrued within 45 days, however, is not extraordinary in nature or amount, or by an unusual method.

The trustee cites *In Re Williams,* 5 B.R. 706 (Bkrtcy.S.D.OH.W.D.1980) in support of his position. In that case, the court held that where the debtor ordinarily paid $28 per month on a revolving charge account, payments totaling $344.83 made three weeks before bankruptcy were not in "the ordinary course of repayment established between these parties during the long existence of the account." *Id.,* at 707.

*Williams* does seem to support the trustee's argument. To the extent it does, however, this court does not agree.

Accordingly, this court holds that, for purposes of § 547(c)(2)(C), where an account is paid by a debtor by check, within 45 days after it is incurred, the debtor is not acting outside the ordinary course of business. This is true even though, in the past, the debtor had not generally paid his debts, or certain types of debt, in a timely fashion.

An order consistent herewith will be entered. This opinion constitutes findings of fact and conclusions of law in accordance with Bankruptcy Rule 7052.