In re AMERICAN INTERNATIONAL
AIRWAYS, INC., Debtor.

Harry P. BEGIER, Jr.,
Trustee, Plaintiff,

v.

UNITED STATES of America,
INTERNAL REVENUE
SERVICE, Defendant.

Bankruptcy No. 84–02379K.
Adversary No. 86–1076K.

United States Bankruptcy Court,
E.D. Pennsylvania.

March 9, 1988.

Paul J. Winterhalter, Philadelphia, Pa., for trustee/plaintiff.

Harry P. Begier, Jr., Philadelphia, Pa., trustee/plaintiff.

Stuart J. Glick, Trial Atty., Tax Div., U.S. Dept. of Justice, Washington, D.C., for defendant.

## OPINION

DAVID A. SCHOLL, Bankruptcy Judge.

### A. INTRODUCTION AND PROCEDURAL HISTORY

The instant proceeding is an action in which the Trustee of a defunct commercial airline now a Chapter 11 Debtor seeks to avoid alleged preferential transfers by the Debtor of substantial sums (approaching $1 million) to the Internal Revenue Service (hereinafter referred to as "IRS"). Herein, we revisit a factual pattern which we addressed in a previous Opinion in this case reported at 70 B.R. 102 (Bankr.E.D.Pa. 1987) (referred to hereinafter as *"IRS Trust"*),[1] and legal issues which we addressed in an Opinion arising out of another proceeding to avoid an alleged preferential transfers to another party in this same case, reported at 68 B.R. 326 (Bankr. E.D.Pa.1987) (referred to hereinafter as *"Krain"*).[2] We hold that the Trustee is entitled to avoid transfers in the sum of $700,410.33 out of transfers totaling $1,641,434.06.

The underlying Chapter 11 bankruptcy case was filed on July 19, 1984. In the early stages of the case, the Debtor attempted to remain in business as a debtor-in-possession. However, by September 19, 1984, the Plaintiff in this proceeding had been appointed as Trustee, and the case has thereafter progressed in a liquidation mode. *See In re American International Airways, Inc.,* 74 B.R. 691, 692–93 (Bankr. E.D.Pa.1987).

The instant proceeding was commenced by the Trustee on September 18, 1987, seeking to recover funds transferred to the IRS in three separate transactions totalling $946,434.06. The Complaint was later amended to include a fourth transfer of $695,000.00, the sum ultimately ascertained to have been deposited into the trust fund account discussed in the *IRS Trust* Opinion.

On February 11, 1987, the IRS filed a Motion for Judgment on the Pleadings or, alternatively, for Summary Judgment in its favor as its initial response to the Complaint. However, the IRS shortly thereafter agreed to withdraw this motion, and, on May 19, 1987, we entered a Pre-trial Order scheduling a trial on August 6, 1987. On that date, the parties advised that they had intended to prepare a Stipulation of Facts and would thereafter file a supplemental Stipulation of Facts, all of which would constitute the record. Accordingly, on August 7, 1987, they filed their initial Stipulation of Facts, and, on September 1, 1987, we entered an Order providing that the supplemental Stipulation would be filed by September 11, 1987, and that briefing, to be completed by October 28, 1987, would follow.

However, in the midst of the briefing, on October 15, 1987, the IRS filed a Motion to Clarify or Grant Relief from the initial Stipulation of Facts, contending that it had erred in its agreement therein as to the Debtor's filing status. We granted that motion over the Trustee's objection in an

1. We utilize this designation because we concluded therein that the IRS could successfully assert a trust as to funds segregated in an account established pursuant to 26 U.S.C. § 7512.

2. This designation is taken from the name of the Defendant in that adversarial proceeding, Krain Outdoor Advertising, Inc.

Order of October 21, 1987, although we did require the IRS to pay $375.00 to the Trustee for causing him to spend time preparing a brief which relied upon the Stipulation as its factual basis. On October 21, 1987, we also entered a Second Pre–Trial Order, scheduling a potential evidentiary hearing, if necessary in light of this modification of the Stipulation, on November 17, 1987.

The hearing was in fact conducted on November 17, 1987. The Trustee called George L. Miller, an accountant who was appointed as "financial management consultant" for the Trustee on July 29, 1985, as his sole witness. The IRS called Alan D. Zlatkin, a revenue officer in its collection division who had serviced the Debtor's account in the pertinent early 1984 period, as its sole witness. After the hearing, the Trustee requested an opportunity to obtain a copy of the transcript before preparing further briefs. Accordingly, we entered an Order of November 18, 1987, allowing the parties to submit their respective briefs at twenty-day intervals subsequent to completion of the transcript. The transcript was not completed until early January, 1988, extending the briefing through February 22, 1988.

In the course of the briefing, the Trustee discovered a letter of May 1, 1984, from Mr. Zlatkin to Bruce Edmondson, the Debtor's chief operating officer, and he moved to open the record to add it. By Stipulation of February 2, 1988, the letter was added to the record by agreement.

Although there were certain factual disputes which the parties believed to be material between them, resulting in the November 17, 1987, hearing, we do not believe that these factual disputes had any significant bearing on our ultimate disposition. Nevertheless, per the dictates of Bankruptcy Rule 7052 and Federal Rule of Civil Procedure 52(a), we are preparing our Opinion in the format of Findings of Fact, Conclusions of Law, and a Discussion.

## B. FINDINGS OF FACT

1. On February 22, 1984, Mr. Zlatkin's office prepared a letter to Mr. Edmondson, informing him that, "effective for the month of March, 1984, ... for the first quarter of 1984 by April 15, 1984," the Debtor was obliged to file monthly, as opposed to quarterly, returns for its Form 941 employment taxes, covering employees FICA and federal income tax withheld by the Debtor (referred to hereinafter as "withholding taxes"), and for its Form 720 excise taxes (referred to hereinafter as "excise taxes").

2. Although the letter was erroneously sent out prior to March 1, 1984, on the latter date it was properly hand-delivered to Mr. Edmondson by Mr. Zlatkin, with a notice also requiring the Debtor to "immediately" establish a separate bank account in which to make deposits of future amounts due for withholding and excise taxes as trustee for the IRS, pursuant to 26 U.S.C. § 7512.

3. The Debtor wrote to the IRS on March 6, 1984, advising that it had that day established a trust fund account as directed in Industrial Valley Bank and Trust Co., at Account No. 802–304–2.

4. Although, according to Mr. Zlatkin, the Debtor was not required, per the terms of the letter, to begin filing monthly returns until April, 1984, the Debtor nevertheless proceeded to file returns for January and February, 1984, on March 15, 1984.

5. The Debtor did make certain deposits into the trust account through the end of April, 1984, after opening this account.

6. Withholding taxes must be paid to the IRS within three business days after the payroll from which the taxes are withheld, or a penalty is imposed upon the taxpayer-employer.

7. There is no statement in the record as to whether or when a penalty is imposed for late payment of excise taxes.

8. The penalty for late payment of withholding taxes is not assessed until the employer's returns are filed. However, unless the employer is granted an extension or some other dispensation, the penalty is assessed at the time of the filing of the return if the payment is not made in timely fashion.

9. The Debtor remitted the following payments in issue to the IRS:

 a. April 30, 1984—$695,000.00 from the trust fund account.

 b. April 30, 1984—$734,797.71 from one of the Debtor's general accounts.

 c. June 22, 1984—$200,000.00 from the same general account.

 d. June 27, 1987—$11,636.35 from the same general account.

10. The above payments were allocated, respectively, as follows:

 a. Both April 30, 1984 payments (allocation not designated between them):

 (1) $259,992.98, for full payment of January, 1984, withholding taxes;

 (2) $228,781.00, for full payment of February, 1984, withholding taxes;

 (3) $102,360.01, for full payment of February, 1984 excise taxes;

 (4) $105,765.68, for part payment of March, 1984, withholding taxes;

 (5) $203,000.33, for full payment of March, 1984, excise taxes;

 (6) $300,000.00, for current April, 1984 withholding taxes; and

 (7) $229,797.71, for current April, 1984, excise taxes.

 b. June 22, 1984, payments—for first quarter, 1984, withholding taxes.

 c. June 27, 1984, payment—for certain 1982 and 1983 taxes.

11. The trust account, having been established on March 6, 1984, to pay taxes collectible only after its existence, could not have been utilized as a depository for any taxes collectible earlier than March, 1984.

12. All withholding taxes due in January, 1984, and February, 1984, totalling $488,773.98, were collectible earlier than March, 1984; could not have been made out of trust funds; and hence cannot be allocated to the $695,000.00 payment.

13. The record does not contain facts sufficient to conclude that any of the other sums paid on April 30, 1984, necessarily would had to have been allocated from either of the two April 30, 1984, payments.

14. The parties stipulated that the Debtor was insolvent as of the date of all of the transfers and that the requirement of 11 U.S.C. § 547(b)(5) was met as to all of the transfers.

## C. CONCLUSIONS OF LAW

1. The $695,000.00 payment out of trust funds cannot be reached by the Trustee. However, no other funds paid to the IRS can be similarly classified as trust funds, and hence the Trustee can recover any other payments as preferential to the extent that he can prove that all of the elements of 11 U.S.C. § 547(b) were present and that no defense pursuant to 11 U.S.C. § 547(c) can be proven by the IRS as to these other payments.

2. A tax debt is "incurred," per § 547(a)(4), when penalties are imposed, irrespective of when the returns for that tax are due. The returns for all taxes from January, 1984, and February, 1984, were due as of April 15, 1984, prior to the payments of April 30, 1984. Hence, there is no question that all of the tax obligations for January, 1984, and February, 1984, were "antecedent debts," pursuant to 11 U.S.C. § 547(b)(2).

3. All of the requirements of 11 U.S.C. § 547(b) were therefore met as to the portion of the transfers of April 30, 1984, which were credited to any January, 1984, and February, 1984, taxes, as well as to the two subsequent June, 1984 transfers.

4. The IRS has not met its burden of proving that the April 30, 1984, payments made towards any January, 1984, and February, 1984, tax obligations were made within forty-five (45) days of the date when the debts were incurred, per § 547(a)(4), and certainly it cannot prove this as to either of the June, 1984, payments. Therefore, the IRS is not able to prove the element of former 11 U.S.C. § 547(c)(2)(B), which is applicable to this case, i.e., that the payments were made not later than forty-five (45) days from when the debts were incurred.

5. However, assuming *arguendo* that it could have met its burden of proving the element of former § 547(c)(2)(B), the IRS

must additionally prove all of the other elements of § 547(c)(2) to succeed in asserting this Code section as a defense. It has failed to prove that the Debtor made any of the payments in the ordinary course of the affairs between the parties or according to ordinary business terms, as required by former 11 U.S.C. §§ 547(c)(2)(C) and (c)(2)(D), respectively. Consequently, the IRS has not proven the existence of a § 547(c)(2) defense as to any of the relevant transfers.

6. Therefore, except to the extent that it is able to argue that certain of the portions of the $695,000.00 trust fund payment could be allocated to taxes collectible prior to March, 1984, the IRS has no viable defenses to the Trustee's claims.

7. The IRS cannot argue that the January, 1984, and February, 1984, withholding taxes paid with the April 30, 1984, funds could possibly have been allocated to the trust fund payment, because those taxes were collectible prior to the establishment of the trust fund.

8. There is no evidence that any other taxes paid on April 30, 1984, could not be allocated to either of the two sources of the April 30, 1984, payments.

9. The IRS is empowered to allocate the remainder of the total April 30, 1984, payments, exclusive of the January, 1984, and February, 1984, withholding taxes (total = $1,429,797.71; remainder = $941,023.71) however it wishes. It is therefore entitled to allocate the $695,000.00 payment to any of the taxes paid in April except those on account of the January, 1984, and February, 1984, withholding taxes.

10. The Trustee is therefore entitled to avoid the transfer of only that portion of the April 30, 1984, payments attributable to January, 1984, and February, 1984, withholding taxes, i.e., $488,773.98, plus the June, 1984 transfers, which totaled $211,636.35.

11. The Trustee is entitled to judgment in the amount of $700,410.33 against the IRS.

## D. DISCUSSION

Our starting point is the observation that payments made by a debtor on tax obligations are subject to avoidance as preferential transfers, like any other transfers which meet the following criteria of 11 U.S.C. § 547(b):

(b) Except as provided in subsection (c) of this section, the trustee may avoid any transfer of an interest of the debtor in property—

(1) to or for the benefit of a creditor;

(2) for or on account of an antecedent debt owed by the debtor before such transfer was made;

(3) made while the debtor was insolvent;

(4) made—

(A) on or within 90 days before the date of the filing of the petition; or

(B) between ninety days and one year before the date of the filing of the petition, if such creditor at the time of such transfer was an insider; and

(5) that enables such creditor to receive more than such creditor would receive if—

(A) the case were a case under chapter 7 of this title;

(B) the transfer had not been made; and

(C) such creditor received payment of such debt to the extent provided by the provisions of this title.

No exception is contained in § 547 for payments on taxes. Moreover, 11 U.S.C. § 547(a)(4) states that, for purposes of § 547, "a debt for a tax is incurred on the day when such tax is last payable without penalty, including any extention." Obviously, if Congress meant to exempt tax payments for the scope of § 547, there would have been no reason to include any provision such as § 547(a)(4) in the Code. Collier so indicates, when it states that this language *replaced* earlier language which would have exempted tax claims from the scope of § 547. *See* 4 COLLIER ON BANKRUPTCY, ¶ 547.02[4], at 547–16 (15th ed. 1987). The IRS apparently does not dispute this point, as its Supplemental (and final) Memorandum of Law cites with

approval to two cases in which payments to the IRS were deemed subject to 11 U.S.C. § 547, *In re Cleveland Graphic Reproduction, Inc.*, 78 B.R. 819 (Bankr.N.D.Ohio 1987); and *In re Morris*, 53 B.R. 190 (Bankr.D.Or.1985). *See also, e.g., Drabkin v. District of Columbia*, 824 F.2d 1102 (D.C.Cir.1987); *United States v. Air Florida, Inc.*, 56 B.R. 732 (S.D.Fla.1985); *In re R & T Roofing Structures & Commercial Framing, Inc.*, 42 B.R. 908, 913–16 (Bankr. D.Nev.1984); *Cf. In re Miller's Auto Supplies, Inc.*, 75 B.R. 676 (Bankr.E.D.Pa.1987) (payments on state taxes avoidable as preferential transfers).

■ · The second issue is whether payments for taxes are removed from the property of the Debtor's estate and hence exempt from characterization as preferential transfers because such payments are supposed to be held as trust funds by debtors. We articulated our limited application of this theory in the *IRS Trust* Opinion in this very case, 70 B.R. at 105. *See also In re Rimmer Corp.*, 80 B.R. 337, 338–39 (Bankr.E.D.Pa.1987); and *Miller, supra.* There, we concluded that only where a tax trust fund is actually established by the debtor and the taxing authority is able to trace funds segregated by the debtor in a trust account established for the purpose of paying the taxes in question would we conclude that such funds are not property of the debtor's estate.

We acknowledge several authorities holding to the contrary, i.e., that the mere requirement that the debtor establish a trust account for tax payments exempts any payments for taxes from the scope of property of the estate. *In re Rodriguez*, 50 B.R. 576 (Bankr.E.D.N.Y.1985); and *In re Razorback Ready–Mix Concrete Co.*, 45 B.R. 917 (Bankr.E.D.Ark.1984). However, the first Court of Appeals addressing the issue in *Drabkin, supra,* not only concurred with our reasoning, but cited our *IRS Trust* Opinion on this issue with approval. 824 F.2d at 1110 n. 27. Other courts have concurred with our reasoning. *See, e.g., Air Florida, supra; In re Olym-pic Foundry Co.*, 63 B.R. 324 (Bankr.W.D. Wash.1986); and *In re Major Dynamics, Inc.*, 59 B.R. 697 (Bankr.S.D.Cal.1986). We reiterate our belief that the application of the trust fund theory must be limited as we indicated in our prior decisions.

■ This observation resolves the issue as to whether the June, 1984, transfers were preferential payments. The only argument made by the IRS as to why these payments should not be deemed preferential is the broad reading of the trust theory espoused by *Rodriguez, supra,* and *Razorback, supra,* and rejected by us. Therefore, the Trustee is clearly entitled to judgment in his favor as to the $211,636.35 paid to the IRS by the Debtor in June, 1984.

The April 30, 1984, transfers are, of course, far more difficult to analyze. On one hand, the Trustee argues that the entire amount of $734,797.71 remitted from the Debtor's general account represented a preferential transfer. The IRS, meanwhile, contends that it can allocate the entire $695,000.00 trust fund to the January and February, 1984, taxes and that, viewing the $734,797.71 as allocated to only March and April, 1984, taxes, none of the payments from the Debtor's general account were preferential. The first building block of the IRS's argument is its contention that none of the Debtor's first quarter, 1984, taxes were incurred until its returns were due on April 15, 1984, and that, since the returns for the April, 1984, taxes were not yet due, the April, 1984, tax obligations were not antecedent debts, per 11 U.S.C. § 547(b)(2). The second building block is its contention that 11 U.S.C. § 547(c)(2), the applicable version of which provided as follows,[3] establishes a defense as to all of the Debtor's tax payments for the first quarter of 1984:

(c) The trustee may not avoid under this section a transfer—

· · · · ·

(2) to the extent that such transfer was—

---

**3.** The pre–1984 version of the Code applies to this case because it was initiated prior to the effective date of the 1984 amendments. *See Krain, supra,* 68 B.R. at 327–28 & n. 2.

(A) in payment of a debt incurred in the ordinary course of business or financial affairs of the debtor and the transferee;

(B) made not later than 45 days after such debt was incurred;

(C) made in the ordinary course of business or financial affairs of the debtor and the transferee; and

(D) made according to ordinary business terms; ...

■ The first question which must be resolved is when a tax debt is deemed to be "incurred." As we indicated at page 328 *supra*, § 547(a)(4) gives explicit guidance on this point, stating that it is incurred when it is "last payable without penalty, including any extension." The parties dispute the meaning of this seemingly simple language when applied to federal withholding taxes. The Debtor contends that it means that as soon as a penalty is imposed, which occurs if payment is not made within three business days of the taxpayer's payroll, the tax debt is "incurred." The IRS, focusing on the term "payable," contends that it means that a tax debt is not incurred until the returns for that tax are due.

Assuming *arguendo* that the IRS is correct in its contention that the date that returns are filed is significant leads to a further dispute as to whether the letter of February 22, 1984, required the Debtor to begin making monthly returns in March, 1984, or April, 1984. The IRS contends that the effective date of the letter was April, 1984, and hence, despite the Debtor's alleged misinterpretation which caused it to make the filing for January and February on March 15, 1984, the returns for the first quarter of 1984 were not in fact due until April 15, 1984. The IRS then argues that none of the taxes for the first quarter of 1984 were "incurred" until April 15, 1984, a

date preceding the Debtor's payment by only fifteen (15) days. Thus, the IRS concludes that it met the requirement of former § 547(c)(2)(B).[4]

Our research reveals that interpretation of § 547(a)(4) is almost non-existent. Collier accurately states that "Congress provided little explanation for this provision."[5] COLLIER, *supra*. The *only* case which our exhaustive research has indicated has ever been purported to interpret this provision is *Drabkin, supra*, where the court states that, if the debtor's tax payment "had been made within 45 days after the penalty period began, then the Trustee could not recover the payment." 824 F.2d at 1115.

This statement by the court in *Drabkin* supports the Trustee's interpretation, as does, we believe, the clear language of § 547(a)(4), which references the imposition of penalty as the significant event. The fact that the penalty, though imposed, is not assessed until later, appears irrelevant. It is the *imposition of the penalty* which the statute indicates is significant.

■ Finally, the interpretation of the Trustee is consistent with the "classic statement" of when a debt is incurred for purposes of § 547(c)(2) in *In re Emerald Oil Co.*, 695 F.2d 833, 837 (5th Cir.1983), i.e., on the date that the debtor becomes liable for a debt, not the date on which an invoice is prepared or on which the debtor is billed. *See Krain, supra*, 68 B.R. at 332; and *In re Art Shirt, Ltd.*, 68 B.R. 316, 324 (Bankr.E.D.Pa.1986) (both cases cite numerous cases following *Emerald*). The date of imposition of the penalty appears to us to be comparable to the date that liability is imposed. The date that the return is due appears comparable to the preparation of an invoice of amounts due for an already-imposed liability.[6]

---

4. The IRS appears to erroneously argue that, if it meets the requirement of § 547(c)(2)(B), it has established a § 547(c)(2) defense. This is, of course, not so, because the four requirements of § 547(c)(2) are set forth in the conjunctive, not the disjunctive. *See* pages 331–332 *infra*.

5. Actually, Congress appears to have given equivocal explanations of this provision. *See* pages 330 & 331 n. 6 *infra*.

6. The IRS, in its initial brief and at argument after the trial on November 17, 1987, asserts authority for its interpretation in the reports to the houses of Congress on the compromises effected in the enactment of the final bill relat-

We therefore conclude that, for purposes of § 547(a)(4), tax debts are incurred as soon as penalties are imposed. It is undisputed that penalties for failing to pay withholding taxes are imposed if payments for the taxes are not remitted within three business days from the date that the taxpayer makes its payroll. It is therefore clear to us that the January and February, 1984, withholding taxes were incurred prior to the opening of the IRS trust account as a depository for payments of future tax liabilities of the Debtor on March 6, 1984.

Furthermore, the January and February, 1984, withholding taxes cannot be allocated to the trust account payment. As 26 U.S.C. § 7512(b) makes clear, is only tax liabilities "which become collectible after delivery of ... notice" to establish a trust fund which are to be deposited into such an account. *See United States v. Stevenson,* 540 F.Supp. 93, 95 (D.Del.1982) ("the requirements of section 7512 are directed toward funds withheld *subsequent to* a failure to withhold and a notice delivered in hand") (emphasis in original). The testimony of Mr. Zlatkin clearly establishes that the notice requiring establishment of the trust fund was not delivered to Mr. Edmondson until March 1, 1984, irrespective of the earlier date appearing on it. The trust account was not opened until March 6, 1984. The January and February, 1984, withholding taxes perforce must have related to taxes incurred *before* the delivery of the notice or the establishment of the fund rather than *subsequent* thereto. Therefore, the deposits in the fund cannot

be allocated to the January and February, 1984, withholding taxes paid out of the April 30, 1984, remittances.

We are uncertain as to when the February, 1984, excise taxes were incurred, or when any of the March, 1984, and April, 1984, taxes were incurred. We therefore cannot be positive of the allocation of any portion of the $734,797.21 non-trust-fund payment as to any taxes except the January and February, 1984, withholding taxes, in the total sum of $488,773.98. As we indicate in our discussion at page 333 *infra*, the IRS is empowered to allocate the balance of the payments however it chooses, restricting the Trustee to the recovery of $488,733.98 from the April 30, 1984, transfers.

We now return to analysis of 11 U.S.C. §§ 547(b) and 547(c)(2) of the Code to determine whether our conclusion that the payment of the January and February, 1984, withholding taxes only was preferential is consistent therewith. Admittedly, the only element of § 547(b) concerning which the IRS contended that the Trustee had not met his burden, as to any of the non-trust-fund transfers, was § 547(b)(2). Clearly, the January and February, 1984, withholding taxes were "antecedent debts" as of April 30, 1984. The only contest on this point was as to the payments on the April, 1984, taxes, which we conclude cannot be avoided in any event.

■ The final point of analysis is consideration of whether the IRS can defend against the transfer of the payments of

---

ing to § 547(c)(2)(B) which stated that "the 45–day period referred to in [Section] 547(c)(2)(B) is to begin running in the case of taxes from the last due date, including extensions, of the return to which the tax payment is made." 124 CONG. REC. H 11114 (daily ed. Sept. 28, 1978); S 17431 (daily ed. Oct. 6, 1978). However, the earlier House Report, addressing apparently the identical language, states that "if a payment is made later than the last day on which the tax may be paid without penalty, then the payment may constitute a preference." H.REP. No. 595, 95th CONG., 1st Sess. 373 (1977), U.S.Code Cong. & Admin.News 1978, pp. 5787, 6329.

This legislative history, relating specifically to § 547(c)(2)(B), is therefore ambiguous and inconclusive in assisting us to interpret § 547(a)(4). We are certainly not prepared to

read a reference to the date of the filing of a tax return into § 547(a)(4) when the only reference in the statute itself is to whether a penalty has been incurred.

In any event, irrespective of the legislative history, the statute in issue clearly makes reference to the date that a tax is payable without penalty rather than date of the filing of the return. Where a statute is plain on its face, it must be interpreted as it reads without resort to legislative history. *See, e.g., American Tobacco Co. v. Patterson,* 456 U.S. 63, 68, 102 S.Ct. 1534, 1537, 71 L.Ed.2d 748 (1982); *Caminetti v. United States,* 242 U.S. 470, 485, 490, 37 S.Ct. 192, 194, 196, 61 L.Ed. 442 (1917); and *United States v. Pennsylvania Environmental Hearing Bd.,* 584 F.2d 1273, 1281 n. 26 (3d Cir.1978).

January and February, 1984, withholding taxes on the basis of § 547(c)(2). First, as is emphasized in *Cleveland Graphic, supra,* 78 B.R. at 822; and *In re Magic Circle Energy Corp.,* 64 B.R. 269, 272 (Bankr.W.D.Okla.1986), the requirements of § 547(c) are set forth in the conjunctive. Therefore, in cases involving the pre–1984–amendment version of § 547(c)(2), all four conditions set forth therein must be satisfied to successfully invoke this defense. *See In re Craig Oil Co.,* 785 F.2d 1563, 1564–65 (11th Cir.1986); and *In re Naudain,* 32 B.R. 871, 874 (Bankr.E.D.Pa.1983).

Secondly, the burden of proving all of these elements is squarely upon the IRS. *See In re Production Steel, Inc.,* 54 B.R. 417, 422 (Bankr.M.D.Tenn.1985); and *In re Ewald Bros., Inc.,* 45 B.R. 52, 56 (Bankr.D. Minn.1984). *See generally In re Energy Cooperative, Inc.,* 832 F.2d 997, 1004 (7th Cir.1987); and *Magic Circle, supra,* 64 B.R. at 272.

While the IRS undoubtedly has established the element of § 547(c)(2)(A) as to all of the transfers in issue, there is considerable question as to whether it has met its burden as to any of the three remaining elements as to the Debtor's payments of April 30, 1984, toward January and February, 1984, withholding taxes.

The first remaining element, set forth in former § 547(c)(2)(B), requires the IRS to establish that payment was made not later than 45 days after the debt was incurred. Since the debts for withholding taxes due in January and February, 1984, were incurred no later than the earliest days of March, 1984, *see* discussion at pages 329–31 *supra,* it is clear that payments remitted on April 30, 1984, *were* made later than 45 days after these particular debts were incurred. The failure to prove this element in itself appears to be fatal to the IRS's § 547(c)(2) defense.

However, the IRS has not met its burden of proving the additional elements of §§ 547(c)(2)(C) or (D), either. As the court in *In re Bourgeois,* 58 B.R. 657, 658 (Bankr.W.D.La.1986), emphasizes, a creditor defending a preferential transfer claim on the basis of § 547(c)(2) must prove that the payment was "in the ordinary course of business of the debtor *and* the transferee" *and* "according to ordinary business terms." As several courts have articulated, these are two discrete tests, the one pertaining to the "subjective" course of dealings between these particular parties, and the other pertaining to the "objective" normative course of business of similarly-situated parties. *See, e.g., Windsor Communications Group v. Freedom Greeting Card Co.,* 63 B.R. 770, 774–75 (E.D.Pa. 1986), *rev'd,* 815 F.2d 697 (3d Cir.1987); *In re Steel Improvement Co.,* 79 B.R. 681, 683–85 (Bankr.E.D.Mich.1987); *Magic Circle, supra,* 64 B.R. at 272–75; and *Production Steel, supra,* 54 B.R. at 422–24.

The IRS presented no evidence of the particular course of dealing between it and the Debtor such as would meet its burden of proving that these transfers were within the "subjective" ordinary course of their past dealings. There were generalized insinuations by Mr. Zlatkin that the Debtor was not a diligent taxpayer prior to the transfers in issue. However, we believe that the burden was upon the IRS to specifically qualify and quantify the parties' past course of dealings relevant to the transfers in issue and show that these transfers were consistent therewith if it wished to satisfy § 547(c)(2)(C). This, we believe it totally failed to do.

Finally, to succeed in a § 547(c)(2) defense, the IRS was obliged to establish that the Debtor's tax payment record was objectively that of a normal, similarly-situated taxpayer. We agree with the IRS's citation of *Cleveland Graphic, supra,* and *Morris, supra,* to make the point that payment of taxes in due course should not be considered other than objectively "ordinary," irrespective of a Debtor's poor past record of making such payments. However, here, the relevant issue is the converse: can a debtor ever justify a failure to pay taxes in timely fashion as "ordinary," even if making untimely payments was its normal past course of conduct? *Cf. Craig, supra,* 785 F.2d at 1567–68 (lateness is of particular relevance in ascertaining whether payment terms were ordinary). With

respect to the payments remitted on April 30, 1984, the "ordinariness" decreases as the period for which taxes are paid becomes more distant. Hence, it is difficult to justify the timeliness, on April 30, 1984, of payments due without penalty three days after the dates that payrolls were made in January and February, 1984. Furthermore, the action of the IRS in invoking 26 U.S.C. § 7512 was an extraordinary remedy. Its mere use here implies that the Debtor failed, in substantial part, to meet payment terms which the IRS deemed objectively ordinary.

We therefore conclude that, at least as to the January and February, 1984, withholding tax payments, the IRS has failed to meet its burden of establishing most of the requisite elements of § 547(c)(2). The payments for these tax liabilities may therefore be avoided by the Trustee.

 However, having determined that the IRS cannot allocate the January and February, 1984, withholding tax payments to the trust fund, we further hold that it *can* allocate the remainder of the payments between those received from the trust fund and those received from the Debtor's general account however it wishes and thus eliminate the prospect of avoidance of any additional preferential transfers.

We agree with the Trustee's argument that the payments made by the Debtor were voluntary, and hence not within the scope of the decision of the Third Circuit Court of Appeals in *In re Ribs–R–Us, Inc.*, 828 F.2d 199 (3d Cir.1987). (IRS can allocate payments on pre-petition priority tax liabilities because such payments are involuntary.)

However, even as to voluntary payments, the creditor has the right to allocate payments as it sees fit if the debtor abdicates its right to do so. *See Pristas v. Landaus of Plymouth, Inc.*, 742 F.2d 797, 801 (3d Cir.1984); *In re Comer*, 716 F.2d 168, 175 (3d Cir.1983); and *Page v. Wilson*, 150 Pa. Super. 427, 433, 28 A.2d 706, 709 (1942). Thus, the IRS should have the right, in the Debtor's failure to do so, to designate allocation of the voluntary payments made by the Debtor to it on April 30, 1984. *See,*

*e.g., National Bank of Commonwealth v. Mechanics' National Bank*, 94 U.S. (4 Otto) 437, 439, 24 L.Ed. 176 (1877); and *Wood v. United States*, 808 F.2d 411, 416 (5th Cir.1987).

The IRS may therefore proceed to allocate the balance of the proceeds of the $695,000.00 trust-fund payments to whatever obligation it chooses, except for the January and February, 1984, withholding tax payments, to which trust fund payments plainly could not be allocated. This right of allocation extends to even the February, 1984, excise taxes, because the Trustee, although imposed with the burden of establishing all elements of the preferential transfers in issue, has failed to establish when the debt for such taxes was incurred, pursuant to §§ 547(b)(2) and (a)(4). The entire $695,000.00 trust fund could have been allocated to the February, 1984, excise taxes; the March, 1984, taxes; and almost all of the April, 1984, withholding taxes. The Trustee has also not proven that at least some of the April, 1984, withholding taxes were not payable without penalty as of April 30, 1984, and consequently has not proven that some of these taxes were incurred as of that date. Therefore, the Trustee has not established that the IRS may not allocate any payments except the $488,773.98 from the January and February, 1984, withholding taxes to the payments from the trust fund.

The Trustee is therefore entitled to set aside the preferential transfer of $488,-773.98 from the April 30, 1984, payments, and no more, in addition to the $211,636.35 transferred in June, 1984. Therefore, we are entering judgment in favor of the Trustee in the amount of the sum of these figures, $700,410.33, in our accompanying Order.