**In re ATLANTIC FISH MARKET, INC., Debtor.**

**ATLANTIC FISH MARKET, INC., Plaintiff,**

v.

**B.G. SHRIMP SALES CO., Defendant.**

Bankruptcy No. 88–14013S.
Adv. No. 89–0288S.

United States Bankruptcy Court,
E.D. Pennsylvania.

June 23, 1989.

As Amended June 26, 1989.

Beth Golden–Frieder, Obermayer, Rebmann, Maxwell & Hippel, Philadelphia, Pa., for debtor.

Mark A. Shaiken, Dechert Price & Rhoads, Philadelphia, Pa., for defendant.

Bruce Schildkraut, Wolf, Block, Schorr and Solis–Cohen, Philadelphia, Pa., for Official Unsecured Creditors' Committee.

**ADJUDICATION**

DAVID A. SCHOLL, Bankruptcy Judge.

A. FINDINGS OF FACT

1. The Debtor and co-Plaintiff ATLANTIC FISH MARKET, INC. (hereinafter

---

**5.** *See* page 754 & n. 4 *supra.* It is readily apparent that an "honor system" in such matters is unworkable.

"the Debtor"), filed a Chapter 11 bankruptcy case on November 15, 1988. This proceeding was filed on March 30, 1989, and tried on June 21, 1989.

2. The Debtor and the Defendant, B.G. SHRIMP SALES CO. (hereinafter "the Defendant"), had a long and harmonious business relationship. The Debtor was one of the Defendant's largest and most consistent customers. The Defendant's high-quality shrimp were the single most significant and distinctive product sold by the Debtor.

3. The only transfers in issue, after consensual dismissal of claims set forth in the Complaint as to two other payments, were payments of two checks, of $100,000 on September 13, 1988, and of $43,912.50 on September 16, 1988, in payment of a single Invoice for an Order of shrimp by the Debtor from the Defendant in the amount of $143,912.50 dated August 9, 1988.

4. The terms set forth on the Invoice were "NET 14 DAYS."

5. The unrebutted and credible testimony of John M. Bailey, Jr., the Debtor's chief financial employee and son of the long-time owner of the Debtor, established that the Debtor had, as of the date of the transfers, valid unsecured claims against it of about $850,000; valid secured claims against it of about $550,000; inventory valued at about $70,000; actual value of accounts receivable, totalling $900,000 on their face, of about $300,000; and no other assets of value.

6. The Defendant's sales manager, Harold Croley, produced records of the Debtor's payment history as to all 35 orders of the Debtor from the Defendant which the latter invoiced in 1987 and 1988. In every case but one, despite the 14–day net payment terms, payments were made 30 days or more after the date of the respective invoices, and eighty-two (82%) percent of the payments were clustered in the range of 36 to 43 days after the dates of the respective invoices. The instant checks were paid 38 and 41 days, respectively, after the date of the Invoice of August 8, 1988. However, except for one other instance, where a check for $50,500 was erroneously drawn for $50,000, the Debtor's

payments to the Defendant were consistently made in a single check.

7. Mr. Croley and James Clarke, the president of a distributor and importer of shrimp and a veteran of over 35 years in the seafood industry, both credibly testified that, although most suppliers (such as the Defendants) invoiced bills demanding payment within a short time-period (Mr. Clark's form recites "NET 7 DAYS" on its bills), payments from wholesalers (such as the Debtor) are generally made and expected within a period of 38 to 45 days from the dates of invoices. Also, paying orders with "split checks" was said to be not uncommon, particularly in 1988, which was a bad year for the seafood industry due to adverse publicity about ocean pollution.

## B. CONCLUSIONS OF LAW

1. The Debtor has established, by a preponderance of the evidence, that all of the requirements of 11 U.S.C. § 547(b) were met as to the transfers in issue. All elements except § 547(b)(3) and (b)(5) were stipulated to exist. The liabilities of the Debtor exceeded its assets and, given the configuration of creditors per Mr. Bailey's testimony, it is apparent that unsecured creditors are very unlikely to be paid in full. We therefore believe that the requirements of § 547(b)(3) and (b)(5) are met also.

■ 2. The Defendant pressed only a defense under 11 U.S.C. § 547(c)(2). A successful defense under 11 U.S.C. § 547(c)(2) places the burden upon the transferee of proving that the transfer was not only in the ordinary course of business, 11 U.S.C. § 547(c)(2)(A), which is clear here, but was also both in the ordinary course of dealings between the parties, 11 U.S.C. § 547(c)(2)(B), *and* made according to ordinary terms in the industry generally. 11 U.S.C. § 547(c)(2)(C). *See In re American International Airways, Inc.,* 83 B.R. 324, 3332–33 (Bankr.E.D.Pa.1988), *aff'd,* C.A. No. 88–3529 (E.D.Pa. August 15, 1988).

3. The Defendant has established, to our complete satisfaction, that the payment terms, though not consistent with the terms on the Defendant's invoices and split

into two payments, were well within the norms of the seafood industry generally during 1988. Thus, we find, without much difficulty, that the Defendant's burden of proving the requirement of 11 U.S.C. § 547(c)(2)(C) has been met here.

 4. Clearly, the timing of the payments in issue was within the ordinary course of dealings between the parties throughout 1987 and 1988. The only real issue of substance is whether the fact that the Defendant, unlike all of the other transactions between the parties over the past two years, intentionally split the payments into two checks rendered the payment outside of the parties' ordinary course of dealings.

The Debtor and the Debtor's OFFICIAL COMMITTEE OF UNSECURED CREDITORS, which vigorously participated in this case as a co-plaintiff, relied heavily upon *In re Air One, Inc.*, 80 B.R. 145 (Bankr.E.D. Mo.1987). However, in that case, three checks into which payment of a single invoice was split were 78, 79, and 92 days, respectively, beyond the defendant's 30-day billing cycle. The facts here are much more like those of *In re Morren Meat & Poultry Co.*, 92 B.R. 737 (Bankr.W.D.Mich. 1988), in which the court found that payments of a single invoice, although split, were *both* made within a time-period consistent with ordinary business terms. *Compare In re Craig Oil Co.*, 785 F.2d 1563, 1567 (11th Cir.1986) (no § 547(c)(2) defense found where most of payments were late even with regard to the parties' dealings, as well as express terms of invoice); and *AIA, supra*, 83 B.R. at 332–33 (late payment of withholding taxes are probably never considered "ordinary").

In our view, the important fact is that both portions of the split payment were within the time limits of the parties' ordinary course of dealings. Given the depressed nature of the industry, we are particularly unwilling to hold that splitting payments was *per se* extraordinary. A perspective of the transaction as a whole favors the Defendant. The presence of the element of § 547(c)(2)(B) has therefore been established here.

5. The Defendant is entitled to judgment in its favor for the amounts in issue on the basis of its valid § 547(c)(2) defense.

## C. ORDER

AND NOW, this 23rd day of June, 1989, judgment is entered in favor of the Defendant, B.G. SHRIMP SALES CO., and against Plaintiffs, ATLANTIC FISH MARKET, INC. and OFFICIAL COMMITTEE OF UNSECURED CREDITORS.