**SAMAR FASHIONS, INC.**

v.

**PRIVATE LINE, INC.**

**Civ. A. No. 90–0499.**

United States District Court, E.D. Pennsylvania.

June 13, 1990.

Allen Dubroff, Joseph B. Finlay, Philadelphia, Pa., for Samar Fashions, Inc.

Seymour Roy, New York City, for Private Line, Inc.

James O'Connell, Asst. U.S. Trustee, Philadelphia, Pa.

## MEMORANDUM AND ORDER

DuBOIS, District Judge.

This is an appeal by defendant below, Private Line, Inc., ("appellant") from a decision of the Bankruptcy Court in favor of debtor and plaintiff below, Samar Fashions, Inc., ("appellee") and against appellant in the amount of $15,240 plus interest at six percent (6%) per annum from August 18, 1989, to the date of judgment, and costs. The decision of the Bankruptcy Court was based upon its determination that payments in the total amount of $15,-240 made by debtor-appellee to appellant were avoidable preferential transfers under 11 U.S.C. § 547(b).

For the reasons stated below, the decision of the Bankruptcy Court is affirmed.

### I.

On October 1, 1987, appellant, Private Line, Inc., sold and delivered two shipments of goods to debtor-appellee, Samar Fashions, Inc., each worth $7,620.00. On September 30, 1987, debtor-appellee delivered a check for $15,240.00 post-dated November 20, 1987 to appellant in payment for the two shipments. Debtor-appellee stopped payment on this check and issued two checks in the amount of $7,620.00 dated December 28, 1987, and January 19, 1988, which were, in fact, paid.

Debtor-appellee, Samar Fashions, Inc., filed a petition for bankruptcy under Chapter 11, 11 U.S.C. § 101 et seq., on February 17, 1988. On August 18, 1989, it filed suit in Bankruptcy Court against appellant, Private Lines, Inc., alleging it was entitled to recover the amount of the payments made to appellant on December 28, 1987, and January 19, 1988, on the ground that they were avoidable preferential transfers of property under 11 U.S.C. § 547(b).[1] Appellant defended on the ground that the transfers fell within the ordinary course of business exception contained in 11 U.S.C. § 547(c)(2).[2]

A hearing was held by the Bankruptcy Court on December 6, 1989, and a decision in favor of debtor-appellee, Samar Fashions, Inc., was issued on December 11,

---

1. 11 U.S.C. § 547(b) provides in relevant part:
   (b) Except as provided in subsection (c) of this section, the trustee may avoid any transfer of property of the debtor—
   (1) to or for the benefit of a creditor;
   (2) for or on account of an antecedent debt owed by the debtor before such transfer was made:
   (4) made—
   (A) on or within the 90 days before the date of the filing of the petition ... and
   (5) that enables such creditor to receive more than such creditor would receive if
   (A) the case were a case under chapter 7 of this title....

2. 11 U.S.C. § 547(c)(2) reads:
   (c) The trustee may not avoid under this section a transfer—
   (2) to the extent that such a transfer was—
   (A) in payment of a debt incurred by the debtor in the ordinary course of business of the financial affairs of the debtor and the transferee;
   (B) made in the ordinary course of business or financial affairs of the debtor and the transferee; and
   (C) Made according to ordinary business terms ...

1989. The Bankruptcy Judge concluded that debtor-appellee had established all the elements of an avoidable preferential transfer required under 11 U.S.C. § 547(b). The Judge also concluded that appellant, Private Line, Inc., had failed to carry its burden of proving that the transactions fell within the ordinary course of business exception contained in 11 U.S.C. § 547(c)(2); he found that appellant failed to demonstrate both that the transfers of property were in the ordinary course of dealings between the parties and that they were made according to ordinary terms in the industry generally.

Private Line, Inc., appealed to the United States District Court on the grounds that the Bankruptcy Court erred (1) in ruling that to establish a defense under 11 U.S.C. § 547(c)(2), a defendant must demonstrate that transfers of property were made in the ordinary course of dealings in the industry in general as well as in the ordinary course of dealings between the parties; (2) in not considering information contained in ledger cards referred to in its Memorandum of Law that was submitted to the Bankruptcy Court during the hearing on December 6, 1989; and (3) in finding that the transfers at issue were not made in the ordinary course of business between the parties.

## II.

Rule 8013 of the Bankruptcy Rules of Procedure provides the standard of review to be applied by a district court on an appeal from a bankruptcy court; findings of fact cannot be set aside "unless clearly erroneous and due regard shall be given to the opportunity of the Bankruptcy Court to judge the credibility of the witness," and conclusions of law are reviewed *de novo*.

■ The Bankruptcy Court did not err when it concluded that to establish an affirmative defense under the ordinary course of business exception, 11 U.S.C.

§ 547(c)(2), a party must demonstrate both that transfers of property were made .in the normal course of business between the parties and that they were made according to ordinary business practices in the industry. That conclusion was based on the plain language of the statute; the statute requires proof of three elements—one of which is that transfers were "made according to ordinary business terms," 11 U.S.C. § 547(c)(2)(C)—in order to establish the defense. That section of the statute would serve no purpose if the Court were to interpret it, as appellant requests, to require only that a transfer be in the ordinary course of dealings between the parties, because that requirement is already contained in 11 U.S.C. § 547(c)(2)(B). In addition, the Bankruptcy Court's interpretation of this section is consistent with that of other courts. *See e.g., In re Colonial Discount Corp.*, 807 F.2d 594 (7th Cir.1986); *In re Atlantic Fish Market Inc.*, 100 B.R. 755, 756 (Bankr.E.D.Pa.1989); *In re American International Airways, Inc.*, 83 B.R. 324, 332–33 (Bankr.E.D.Pa.1988), *aff'd*, C.A. No. 88–3529 (E.D.Pa. Aug. 15, 1988), *rev'd on other grounds sub nom., Begier v. United States*, 878 F.2d 762 (3rd Cir. 1989), *cert. granted*, —— U.S. ——, 110 S.Ct. 714, 107 L.Ed.2d 734 (1990).

■ Similarly, the Bankruptcy Judge did not err in concluding that the transfers of property between appellant, Private Line, Inc., and debtor-appellee, Samar Fashions, Inc., occurred outside of their normal course of dealings. The payments by debtor-appellee were made 88 and 110 days late. Appellant attempted to establish that these payments were made in the normal course of business between the parties by arguing that debtor-appellee regularly made payments this late. It based this contention on ledger cards obtained during discovery which allegedly established an average 60-day delay in payment. These cards were referred to during appellant's cross-examination of Richard First [3], debt-

---

3. During cross-examination, counsel for appellant asked Mr. First about ledger cards of accounts payable to vendors for merchandise for 1987 and 1988. These ledger cards were produced by debtor-appellee in discovery but were

not presented to the witness at the hearing. Counsel for appellant attempted to get Mr. First to testify that the ledger cards revealed "a great many payments that were made 60 days and later." Mr. First, however, refused to agree and

or-appellee's former Controller, and in a Memorandum of Law submitted by appellant to the Bankruptcy Court after the hearing on December 6, 1989, but were never admitted into evidence.

The Bankruptcy Court refused to consider the ledger cards because they were not admitted in evidence. Relying upon the testimony of Mr. First, the Bankruptcy Court found that debtor-appellee paid its accounts in an average of 45 days after the date of invoice.

Appellant claims the Bankruptcy Judge committed reversible error in refusing to consider the ledger cards obtained from debtor-appellee. As the Bankruptcy Court noted, however, these cards were never offered in evidence. It was not reversible error for the Bankruptcy Court under these circumstances to refuse to consider this evidence.

■ The Bankruptcy Court also did not err in concluding that the payments made by appellant to debtor-appellee did not occur in the ordinary course of business. In reviewing the lower court's decision, this Court can only consider evidence contained in the record, see In Re Gilchrist, 410 F.Supp. 1070, 1074 (D.C.Pa.1976), and may overturn findings of fact only if they are clearly erroneous. See e.g., In Re Meade Land and Development Co., Inc., 527 F.2d 280, 282–83 (3rd Cir.1975). In this case, the testimony of Richard First, unrebutted on the record, provides ample support for the Bankruptcy Court's finding that the 88 and 110 day delays in payment were abnormally long delays and, therefore, did not occur in the ordinary course of business between appellee-debtor, Samar Fashions, Inc. and appellant, Private Line, Inc.[4]

For the reasons stated above, the decision of the Bankruptcy Court is affirmed.

responded, "the average payment date—the average payment period over my experience with Samar is 45 days." (Bankr.Trans. at 20). Mr. First reiterated that he believed the average to be 45 days at least once more during his cross-examination. (Bankr.Trans. at 21).

4. It is important to note that the Bankruptcy Judge's findings on this issue would not have been different had he accepted appellant's assertion that the average delay in paying for ship-ments was actually 60–days and not the 45–days to which Mr. First testified. The Bankruptcy Judge, in explaining why the transactions were not within the ordinary course of business between the parties, stated, "The payments actually made were remitted 88 days and 110 days after the dates of the respective invoices. This is far in excess of not only the 45–day average recited by First, but the 60–day average argued by the defendant." (Bankr.Dec. at 4).